UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARMEN RIVERA,
    *Plaintiff*,

v.

NANCY A. BERRYHILL,
    *Defendant*.

No. 3:16-cv-01842 (JAM)

**RULING GRANTING MOTION TO AFFIRM AND DENYING MOTION TO REVERSE**

Plaintiff Carmen Rivera alleges that she is disabled and cannot work because of, among other impairments, rheumatoid arthritis, fibromyalgia, depression, anxiety, and bipolar disorder. Pursuant to 42 U.S.C. § 405(g), she seeks review of the final decision of the Commissioner of Social Security denying her claim for social security disability and supplemental security income. The parties have now filed cross-motions to reverse and affirm.[1] For the reasons explained below, I will deny plaintiff's motion to reverse and grant the Commissioner's motion to affirm.

**BACKGROUND**

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #18-1 through Doc. #18-9. Plaintiff filed an application for disability insurance benefits under Title II

---

[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration. On January 23, 2017, Deputy Commissioner Nancy A. Berryhill became the Acting Commissioner. There is some doubt about Berryhill's current legal status in light of the recent determination by the Government Accountability Office that her tenure has expired under the Federal Vacancies Reform Act. *See* U.S. Gov't Accountability Office, B-329853, Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998—Commissioner, Social Security Administration (2018), https://www.gao.gov/products/D18772#mt=e-report (last accessed March 19, 2018). When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the court may order substitution at any time. *Ibid.* The Clerk of Court shall amend the caption in this case as indicated above.

on April 26, 2013, and filed an application for supplemental security income under Title XVI on May 20, 2013. In both applications, she alleges a disability onset date of December 9, 2012. Plaintiff most recently worked for Yale-New Haven Hospital for approximately five years in the environmental services department and ended her employment there in early 2013. Doc. #18-6 at 17. Plaintiff's claims were denied on August 14, 2013, and again upon reconsideration on November 13, 2013. Plaintiff then timely filed a written demand for a hearing.

Plaintiff appeared and testified before Administrative Law Judge (ALJ) I. K. Harrington on November 13, 2014. Plaintiff was represented by counsel. Vocational expert Albert Sabella testified at the hearing. On March 17, 2015, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act. *See* Doc. #18-3 at 26-40. On September 1, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Doc. #18-3 at 12. Plaintiff timely filed this federal action seeking review of the ALJ's decision. *See* Doc. #1.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations)

having requirements which [a claimant] [is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since December 9, 2012, the date of the alleged onset of her

disability. Doc. #18-3 at 29. The ALJ observed that plaintiff's earning records reflected that she earned $1,217.79 in 2013, but that the amount is below the $1,040 per month presumptive level for substantial gainful activity. *Ibid.*

At Step Two, the ALJ found that plaintiff had the following "severe impairments" during the relevant time period: major depressive disorder, generalized anxiety disorder, bipolar disorder, fibromyalgia, and rheumatoid arthritis. *Ibid.* At Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 29–30.

At Step Four, the ALJ found that plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [plaintiff] can frequently stoop, and occasionally, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds," but she is limited to "simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes." *Id.* at 33. Additionally, plaintiff "can have no interaction with the general public, cannot perform tandem tasks, and can occasionally interact with co-workers and supervisors." *Ibid.*

In formulating the residual functional capacity (RFC), the ALJ accorded "substantial weight" to the opinions of non-examining medical and psychological consultants of the state agency. *Id.* at 35. The initial consultant was Rafael Wurzel, M.D., and the reconsideration consultant was Lewis Cylus, M.D. *Ibid.* The medical consultants concluded that plaintiff was capable of performing light work. Doc. #18-4 at 14, 44. They further opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand, walk, or sit for six to eight hours per day, with some postural limitations, but no manipulative limitations. *Id.* at 10–12, 40–42. Dr.

Cylus explained that plaintiff had a history of rheumatoid arthritis and fibromyalgia, but that there was no evidence of active synovitis—*i.e.*, inflammation. *Id.* at 41. He did note arthralgias, but plaintiff had a normal gait, 70-degree lumbar flex, normal toe/heel gait, and a full squat. *Ibid.*

As to the psychological opinions, Robert Decarli, Psy.D. opined that plaintiff could perform simple work for two-hour periods in an eight-hour day with adequate concentration and pace, but could have occasional problems with prolonged concentration and sustained pace due to her lowered mood. *Id.* at 12. He rated plaintiff's individual sustained concentration and persistence limitations, social interaction limitations, and adaption limitations to be either "not significantly limited" or "moderately limited." *Id.* at 11-13. On reconsideration, Deborah Stack, Psy.D. reached the same conclusion. *Id.* at 42-43.

The ALJ accorded the opinion of Herbert Reiher, M.D., the physical consultative examiner partial weight. Doc. #18-3 at 35. The ALJ accorded great weight to Dr. Reiher's opinion that plaintiff could sit, stand, or walk for six hours in an eight-hour work day, lift and carry 10 pounds occasionally, and was limited in her ability to squat and reach. *Ibid.* She accorded less weight to Dr. Reiher's opinion regarding plaintiff's limitations with respect to her ability to lift, carry, reach, and squat, because his conclusions were inconsistent with medical evidence of improvement. *Ibid.*

The ALJ accorded the opinion of Babu Kumar, M.D., plaintiff's primary care doctor, no weight. Doc. #18-3 at 36. Dr. Kumar's opinion was that "[d]ue to her medical condition and persistent symptoms, [plaintiff] will be unable to return to work for the next 12 months." Doc. #18-9 at 168. The ALJ explained that Dr. Kumar's opinion merited no weight because it was a legal conclusion reserved for the Commissioner and not a medical opinion. Doc. #18-3 at 36.

5

The ALJ also gave no weight to the opinion of Kim Striegel, APRN. Nurse Striegel opined that plaintiff could perform only less than sedentary work and would miss more than five days of work each month. Doc. #18-9 at 169-71. She also stated that plaintiff could never bend, stoop, balance, raise each arm above the shoulder, or finely manipulate with either hand. *Id.* at 170. First, the ALJ evaluated Nurse Striegel's opinion as that of an "other source" in view of the fact that the opinions of nurses are not acceptable *medical* opinions. Doc. #18-3 at 36. The ALJ further elaborated that Nurse Striegel's opinion was not entitled any weight because her opinion was in the form of a checklist and was contradicted by other evidence in the record. *Ibid.*

The ALJ accorded little weight to the opinion of Liese Franklin-Zitzkat, Psy.D., the psychiatric consultative examiner. *Id.* at 37. The ALJ explained that the opinion was rendered only shortly after plaintiff began mental health treatment, was principally based on self-reported symptoms, and was inconsistent with medical evidence of "noted improvement and stability" when plaintiff was medically compliant. *Ibid.*

After determining plaintiff's RFC, the ALJ concluded that plaintiff is capable of performing past relevant work as a suture gauger, because the activities that pertain to such work are not limited by her RFC. *Id.* at 38.

At Step Five, after considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs plaintiff can perform exist in significant numbers in the national economy. *Id.* at 38. The ALJ relied upon the vocational expert's testimony that plaintiff could perform the requirements of representative occupations such as an electrical accessories assembler, a plastic products inspector, and a sealing machine operator. *Id.* at 39. The ALJ ultimately held that plaintiff was not disabled within the meaning of the Social Security Act. *Ibid.*

**DISCUSSION**

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Plaintiff advances four claims of error. First, she claims that the ALJ failed to develop the administrative record in that she failed to seek and acquire an adequate medical opinion from a treating medical source. Second, she claims that the ALJ's determinations with respect to various medical opinions were incorrect. Third, she claims that the ALJ improperly weighed plaintiff's subjective claims of pain. Finally, plaintiff claims that the ALJ's vocational findings are unsupported by the evidence of record. I will consider each of these arguments in order.

*Failure to develop the record*

Plaintiff claims that the ALJ failed in her affirmative duty to develop the administrative record in that she did not obtain medical opinions from two of her treating physicians: Dr. Kumar, and her psychiatrist at Catholic Charities, Michael Kligfeld, M.D.[2] The ALJ has a "duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (quoting *Butts v.*

---

[2] Plaintiff concedes that it was not improper for the ALJ to disregard Dr. Kumar's conclusory opinion that plaintiff's impairments will preclude her from doing any work for the next 12 months.

7

*Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)). "This duty exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

In order to fully develop the record, a medical source statement is not necessarily required, so long as "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). Accordingly, the Second Circuit has concluded that an ALJ was not under an obligation to further develop the record where the record contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). More recently, the Second Circuit rejected a challenge to the adequacy of the development of the record in a case where the ALJ disregarded the treating physician's opinion—the only treating source opinion—and made an RFC determination based in part on the treating source's notes that contained descriptions of the plaintiff's symptoms and contemporaneous medical assessments sufficient to assess plaintiff's ability to perform sustained gainful activity. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8–9 (2d Cir. 2017) ("Because the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes—while at the same time rejecting his *post hoc* medical opinion ostensibly based on the observations memorialized in those notes—that determination was adequately supported by more than a mere scintilla of evidence.").[3]

Here, the record contains the notes of Dr. Kumar, Nurse Striegel, and the mental health staff at Catholic Charities, which included Dr. Kligfeld. The record also contains the consultative examiners reports from Drs. Reiher and Franklin-Zitzkat, as well as the non-consultative

---

[3] Plaintiff cited recent district court cases for the first time at oral argument, but none of these cases cite the Second Circuit's decision in *Monroe*.

examinations from the state agency. There is adequate meat on the bones of this record for the ALJ to have made a determination of plaintiff's RFC that is supported by substantial evidence.

*Weight of opinion evidence*

Plaintiff disputes the weight given to various opinions by the ALJ. First, plaintiff complaints that the ALJ gave no weight to Nurse Striegel's opinion. The parties agree that her opinion does not constitute a medical opinion. Rather, her opinion is regarded as an "other source" opinion. 20 C.F.R. § 404.1513(a)(4). An ALJ should not reject the opinion of a non-medical treating source such as a nurse practitioner based solely on the fact that the source is not "medical." *See, e.g.*, *Gillies v. Astrue*, 2009 WL 1161500, at *6 (W.D.N.Y. 2009). Nevertheless, the ALJ has discretion to discount such opinion evidence if it is contradicted by objective medical evidence and opinions of medical consultants. *See, e.g.*, *Figueroa v. Astrue*, 2009 WL 4496048, at *12 (S.D.N.Y. 2009).

Nurse Striegel opined that plaintiff could sit for 30 minutes at a time for two hours per day, stand for 15 minutes at a time, and would need 15-20 minute breaks five times per day every day. Doc. #18-9 at 170. She added that plaintiff would be absent from work five times per month. *Id.* at 171. These limitations were contradicted by certain objective medical evidence. On November 21, 2013, plaintiff's rheumatoid arthritis was described as "stable." *Id.* at 97. On December 19, 2013, there was no evidence of active rheumatoid arthritis "on exam or in [plaintiff's] blood work or radiographic workup." *Id.* at 92. As to plaintiff's fibromyalgia, when she took her medication she "tolerated it without adverse side effects and feels that she is worse since discontinuing it." *Id.* at 101. In March of 2014, plaintiff's fibromyalgia was moderate, and the symptoms were fairly controlled. *Id.* at 78. In October 2013, radiological exams of plaintiff's hands were unremarkable. *Id.* 110. An x-ray of plaintiff's left foot revealed early joint arthritis,

9

while the x-ray of the right foot revealed early enthescopathic change at the plantar region. *Id.* at 107-08. To be sure, Nurse Striegel observed plaintiff complain of more severe arthritic pain. *See, e.g.*, *id.* at 78, 83. But Nurse Striegel also more recently observed that the arthritis was improving with medication and joint swelling had reduced. *Id.* at 67, 70.

Moreover, Nurse Striegel used a simple form when rendering her opinion of plaintiff's ability to work. The Second Circuit has consistently held that opinions rendered on "check-box" forms are often the ones that offer little meaningful insight into the basis for the clinician's findings. *See Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (finding that a standardized multiple-choice form completed by a treating physician was only marginally helpful); *Latham v. Colvin*, 2016 WL 6067848, at *4 (W.D.N.Y. 2016) ("ALJ did not err when he disregarded Nurse Pfalzer's 'check-box' form, which included no supplementary explanation or supporting evidence to corroborate her findings"). Accordingly, I conclude that the ALJ did not err in according no weight to Nurse Striegel's opinion.

Plaintiff next argues that the ALJ erred by giving little weight to the opinion of Dr. Franklin-Zitzkat, a consultative psychological examiner. Dr. Franklin-Zitzkat opined that plaintiff would have moderate to marked difficulty sustaining concentration in a work setting, difficulty withstanding the stresses and pressures of routine work day, and, at times, difficulty responding appropriately to supervisors or co-workers. Doc. #18-8 at 68. She also stated that plaintiff's depression and anxiety could interfere with her ability to maintain attendance. *Ibid.* This opinion was rendered in August of 2013.

The ALJ discounted this opinion, in part, because it was predicated on self-reported symptoms. The ALJ's determination to discount the opinion for this reason was supported by substantial evidence. When plaintiff treated with Dr. Liker, she reported no nervousness,

depression, mood disorder, or tension in December 2013. Doc. #18-8 at 116. The same month, her psychiatrist noted that she was "doing well psychiatrically." Doc. #18-9 at 59. In June 2014, she reported no depressed mood, memory loss, or confusion, but complained of "nervousness" and "stress." Doc. #18-8 at 121. When she treated at her primary care clinic, she denied depression or hallucinations but admitted anxiety in April 2014. Doc. #18-9 at 29. In June 2014, her psychiatrist noted that she was "psychiatrically stable." *Id.* at 57. When Nurse Striegel treated plaintiff, she repeatedly noted that plaintiff was negative for depression or anxiety. *See, e.g.*, *id.* at 67 (May 22, 2014); *id.* at 78 (March 27, 2014), *id.* at 84 (February 20, 2014), *id.* at 89 (negative for anxiety, positive for depression on December 19, 2013), *id.* at 98 (November 21, 2013); *but see id.* at 102 (reported positive for anxiety and depression on Oct. 7, 2013). Additionally, Nurse Striegel reported that plaintiff had an appropriate mood and affect on May 22 and March 27, 2014. *Id.* at 70, 86.

To be sure, plaintiff did appear to have some severe episodes, including in-patient treatment at Yale-New Haven Hospital Psychiatry after presenting at the emergency department with suicide ideation. This appears to have been attributed to the fact that she stopped taking lithium because it caused her to gain weight. Doc. #18-9 at 48, 138. She was taking lamotrigine at the time she was hospitalized, but not at a therapeutic dose. *Id.* at 122. Perhaps a different fact-finder would conclude differently, but I conclude that the ALJ's credibility determination here—and corresponding determination to discount Dr. Franklin-Zitzkat's opinion—was supported by substantial evidence.

Plaintiff's remaining complaint is about the weight given to the consultative examiner opinions of Drs. Wurzel and Cylus whose specialties are urology and dermatology, respectively. Doc. #22-1 at 28. Plaintiff does not cite any law that requires a consultative examiner to

11

specialize in the field of medicine most closely related to a claimant's alleged impairments. I conclude that the ALJ permissibly relied on the consultative opinions of Drs. Wurzel and Cylus.

*Plaintiff's credibility*

Plaintiff claims that the ALJ erred in concluding that plaintiff's subjective complaints of pain were not entirely credible, arguing that such a credibility determination was not supported by substantial evidence. To the contrary, the ALJ supported her findings with objective medical evidence. First, the ALJ noted that when plaintiff treated with Dr. Likener, she did not report any musculoskeletal symptoms. Doc. #18-8 at 97, 100, 103. When treating with other providers, she routinely reported that she was not in acute distress. *Id.* at 33, 38, 44, 52, 54, 82, 97, 100, 103, 158, 169; Doc. #18-9 at 32, 35. In October 2013, radiological exams of plaintiff's hands were unremarkable. Doc. #18-9 at 110. An x-ray of plaintiff's left foot revealed early joint arthritis, while the x-ray of the right foot revealed early enthescopathic change at the plantar region. *Id.* at 107-08. A lumbar spine x-ray did reveal mild narrowing of the L2-L3 disc, with remaining disc spaces preserved and some facet arthopathy at L5-S1. *Id.* at 20.[4] As noted above, on November 21, 2013, plaintiff's rheumatoid arthritis was described as "stable." *Id.* at 97. On December 19, 2013, there was no evidence of active rheumatoid arthritis "on exam or in [plaintiff's] blood work or radiographic workup." *Id.* at 92. As to plaintiff's fibromyalgia, when she took her medication, she "[t]olerated it without adverse side effects and feels that she is worse since discontinuing it." *Id.* at 101. In March of 2014, plaintiff's fibromyalgia was moderate and the symptoms were fairly controlled. *Id.* at 78.

---

[4] The ALJ notes that there are no abnormalities in plaintiff's shoulder joints, citing Doc. #18-9 at 20. The ALJ appears to have misunderstood the finding of "unremarkable sacrum and sacroiliac joints," which refer to the where the spine meets the hip, not the shoulder.

The ALJ also noted that plaintiff performed some work after the alleged onset of her disabling impairments. Although not enough to amount to disqualifying substantial gainful activity, it was an additional basis to conclude that plaintiff's conditions were not as limiting as plaintiff alleged. All in all, the ALJ's credibility determination of plaintiff's allegations of pain is supported by substantial evidence.

*ALJ's vocational findings*

Plaintiff claims that the ALJ's vocational findings are unsupported by substantial evidence. Plaintiff raises two arguments. First she argues that the vocational expert misidentified one of plaintiff's past jobs as a "suture gauger" because the definition of a suture gauger set forth in the Dictionary of Occupational Titles (DOT) does not precisely track plaintiff's description of her previous job at Covidien. Second, plaintiff argues that the Step Five determination is erroneous because the ALJ posed a hypothetical to the vocational expert that exaggerated her physical capabilities.

"At [S]tep [F]our, a claimant bears the burden of showing that she cannot perform her past relevant work." *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 127 (2d Cir. 2016). Even if the vocational expert misidentified the title of plaintiff's prior work, plaintiff testified that she formerly worked for Covidien where she threaded suture material through a needle by wrapping the suture and needle into an "A" shape and placing it in a holder. Doc. #18-3 at 85-86; Doc. #22-1 at 37 n.65. On this record, plaintiff has not carried her burden of showing she would be unable to this work. Accordingly, I conclude that the ALJ did not err at Step Four.

Even if I am wrong, any error at Step Four would be harmless, so long as the ALJ's Step Five finding of alternative work opportunities is supported by substantial evidence. *See, e.g.*, *Jimenez v. Colvin*, 2016 WL 5660322, at *16 (S.D.N.Y. 2016); *Mitchell v. Colvin*, 2015 WL

5306208, at *7 (S.D.N.Y. 2015). Plaintiff's complaint about the hypothetical posed by the ALJ is that, like the ALJ's RFC finding, it includes an ability to climb ropes. But even though plaintiff cannot climb ladders, ropes, and scaffolds, these activities are not material to the kinds of jobs the vocational expert testified plaintiff could perform: assembler of electronic accessories, plastic products inspector, or sealing machine operator. Therefore, even if it was error to include in the hypothetical an assumption that plaintiff could engage in climbing activity, any error was harmless. *See Mitch v. Colvin*, 2016 WL 6695874, at *5 (W.D.N.Y. 2016). Accordingly, I conclude the ALJ's Step Five determination was supported by substantial evidence.

## CONCLUSION

Plaintiff's motion to reverse the decision of the Commissioner (Doc. #22) is DENIED. The Commissioner's motion to affirm the decision of the Commissioner (Doc. #23) is GRANTED.

It is so ordered.

Dated at New Haven this 28th day of March 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge